UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
TRINITY SUNAZ,

                                        Plaintiff,              Civil Case No.:

         v.

                                                 **COMPLAINT**

DESPONT STUDIOS LLC d/b/a THE OFFICE OF
THIERRY W. DESPONT, LTD. and JAMES
SMITH, in his individual and professional       **Jury Trial Demanded**
capacities,

                                     Defendants.
-----------------------------------------------------------------X

Plaintiff Trinity Sunaz hereby alleges as follows:

## PRELIMINARY STATEMENT

1.      Plaintiff Trinity Sunaz, a former Housekeeper at Defendant Despont Studios LLC ("Despont" or "OTD") of Filipino descent, was treated like a second-class citizen during her employment where she was mercilessly sexually harassed and subject to demeaning ethnic slurs. Ms. Sunaz complained internally about the discriminatory conduct, but Despont never issued any legitimate rebuke to the wrongdoers, and the unlawful conduct was permitted to continue, ultimately forcing Ms. Sunaz with no choice but to leave. This is now the second time in approximately one year that Despont is being accused by an employee of creating and condoning a workplace where discrimination thrives and refusing to engage in any appropriate measures to prevent or remedy the completely demeaning and discriminatory work environment.[1]

---

[1]     See Moore v. Despont Studios LLC, et al., No. 16-cv-00619 (S.D.N.Y.) where an employee alleged that, after five years of employment, she was fired two weeks after she complained of pregnancy discrimination, her termination decision was conveyed to her in the meeting that was scheduled to discuss the results of the company's discrimination investigation, and where the employee was then countersued after she filed a discrimination lawsuit.

2. Ms. Sunaz was subjected to pervasive sexually harassment at the hands of Defendant James Smith – one of the company's accountants – which started as barrage of sexually charged verbal harassment, including, but not limited to, comments such as that he liked "**girls with big boobs**," telling Ms. Sunaz that "**You've got the biggest boobs in the office**," remarking that Ms. Sunaz looked like she "**had rough sex last night**," creating rumors in the office that Ms. Sunaz offered to give him "**a blowjob**," and even directly telling Ms. Sunaz to "**take your bra off so I can see the puppies**" and to "**send naked pictures**." However, Mr. Smith's offensive conduct escalated to include physically grabbing and groping Ms. Sunaz's breasts and behind and thrusting her face into his crotch, all in the face of unequivocal demands from Ms. Sunaz that he stop.

3. The pattern of discrimination at Despont simply must come to an end. Despont must change its policies and practices and create an environment where discrimination, sexual harassment and retaliation are not only eradicated, but where employee complaints of unlawful conduct are taken seriously and addressed with due and proper care. As such, Ms. Sunaz seeks not only monetary damages, but also injunctive relief to redress the unlawful employment practices committed by Defendants against her and others, in violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), the New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.* ("NYSHRL") and the New York City Human Rights Law, N.Y. City Administrative Code §§ 8-101 *et seq.* ("NYCHRL").

**ADMINISTRATIVE PROCEDURES**

4. Ms. Sunaz will file a charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"). When the EEOC issues Ms. Sunaz

a notice of right to sue or otherwise dismisses her charge, she will seek leave to amend this Complaint to add claims under Title VII.

5. Pursuant to NYCHRL § 8-502, a copy of this Complaint will be served upon the New York City Commission on Human Rights and the New York City Law Department, Office of the Corporation Counsel, within ten days of its filing, thereby satisfying the notice requirements of that section.

6. Any and all other prerequisites to the filing of this suit have been met.

## JURISDICTION AND VENUE

7. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiff's rights under Section 1981. The Court has supplemental jurisdiction over Plaintiff's related claims arising under State and local law pursuant to 28 U.S.C. § 1367(a).

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant Despont's headquarters are located within the Southern District of New York and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## PARTIES

9. Plaintiff Trinity Sunaz is a Filipino female and former employee of Despont. Ms. Sunaz was constructively discharged from her position as a Housekeeper on or about January 20, 2017. She is a citizen of the United States and a citizen of the State of New Jersey. At all relevant times, Ms. Sunaz met the definition of an "employee" and/or "eligible employee" under all applicable statutes.

3

10. Defendant Despont Studios LLC d/b/a The Office of Thierry W. Despont, is a domestic limited liability company. At all relevant times, Despont met the definition of "employer" and/or a "covered employer" under all relevant statutes.

11. Defendant James Smith is a white male, who, upon information and belief, resides in the State of New York. Mr. Smith is an Accountant at Despont and directly supervised Ms. Sunaz from, in and around, December 2014 until her constructive discharge on or about January 20, 2017, and directly had authority over the terms and conditions of Ms. Sunaz's employment and directly participated in the discriminatory conduct. At all relevant times, Mr. Smith met the definition of "employer" and/or "covered employer" under all relevant statutes.

## FACTUAL ALLEGATIONS

**Discrimination and Harassment by Salome Santos**

12. In or around December 2014, Ms. Sunaz began working at Despont as a Housekeeper.

13. At all times, Ms. Sunaz was a good, valuable and hardworking employee.

14. Despont had one other Housekeeper named Salome Santos, who was already working there when Ms. Sunaz started.

15. Throughout her employment, Ms. Santos harassed and discriminated against Ms. Sunaz on account of her race and ethnicity.

16. For instance, but only by way of example, Ms. Santos repeatedly referred to Ms. Sunaz as a "monkey," told her that her son is a "monkey," repeatedly told her that her "whole family is monkeys," and constantly called her ugly. These insults and derogatory name-calling occurred on a frequent basis.

17. In addition, Ms. Santos was rude, belligerent and harassing towards Ms. Sunaz around the workplace, which included slamming doors on Ms. Sunaz, telling her to "fuck off," ignoring her and otherwise creating a hostile work environment towards Ms. Sunaz.

18. Upon information and belief, the reason Ms. Santos treated Ms. Sunaz in this manner is because she holds animus towards Ms. Sunaz on account of her Filipino ethnicity and considers Filipinos as "monkeys."

19. As early as October 2015, Ms. Sunaz reported this discriminatory conduct to Elaine Vivar Camin (an Office Administrator) and Deborah Baker (an Associate). In response, upon information and belief, the only remedial measure taken was that Ms. Camin and Ms. Baker told Ms. Santos to stop harassing Ms. Sunaz.

20. However, even after Ms. Sunaz's complaints and the purported instruction to Ms. Santos that the harassing conduct cease, Ms. Santos continued to harass Ms. Sunaz, continued to refer to her as a "monkey," and continued to create a hostile work environment.

21. In or around October 2016, Ms. Sunaz again complained to Ms. Camin about Ms. Santos' harassing and discriminatory conduct. In response, Ms. Sunaz was given a week off and, when she returned, was called into a meeting with Ms. Baker, Matthew Maddalene (a Managing Senior Associate) and Louis Gonzalez (a Senior Associate) to discuss the situation.

22. At this meeting, Ms. Baker, Mr. Maddalene and Mr. Gonzalez informed Ms. Sunaz that the solution they had come up with to remedy this problem was that Ms. Santos and Ms. Sunaz would work on different floors.

23. However, this so-called "solution" did not remedy the problem, as Ms. Santos was not disciplined for her conduct in any way, Ms. Santos and Ms. Sunaz still saw each other often in the workplace and Ms. Santos continued to mistreat Ms. Sunaz.

24.     On or about November 1, 2016, Ms. Sunaz again complained to Ms. Camin that Ms. Santos was continuing to harass her and explained that she was suffering from serious distress and associated manifestations from the workplace environment.

25.     However, no further even attempted remedial measures were taken by Despont, and the discriminatory and harassing conduct continued.

**Sexual Harassment by James Smith**

26.     In addition to suffering from discriminatory and harassing treatment from Ms. Santos, Ms. Sunaz was also sexually harassed by Mr. Smith throughout her employment. Mr. Smith's sexually harassing conducted included, but was not limited to the following:

- Mr. Smith frequently made inappropriate remarks to Ms. Sunaz (but not to anyone else) about his sexual desires and likes, including for instance, that he liked "**Brazilian girls with big boobs**."

- Mr. Smith asked Ms. Sunaz whether she was "**flexible,**" in regards to whether she was able to have sex in different positions.

- Mr. Smith showed Ms. Sunaz photographs of women with large breasts on his smartphone.

- Mr. Smith made remarks about Ms. Sunaz's body, including for example, "**You've got the biggest boobs in the office**."

- Mr. Smith made remarks about Ms. Sunaz's sexual appetite, such as, "**You're so energetic, you must not have that much sex,**" or "**What happened, you had rough sex last night**" making reference to a cut Ms. Sunaz had on her ankle.

- Mr. Smith lied to people around the office and told them that Ms. Sunaz offered to give him a "blow job" at the 2015 office holiday party.

- In response to Ms. Sunaz's request for her paycheck via email, Mr. Smith responded: "**OK – take your bra off so I can see the puppies**."

- Mr. Smith even texted Ms. Sunaz to "**send naked pictures**."

27.     None of this behavior and none of these advances were at all welcomed by Ms. Sunaz and she repeatedly told Mr. Smith to stop.

6

28. By in or around Fall 2016, Mr. Smith's conduct escalated from offensive and harassing remarks and comments to unwanted physical touchings.

29. On one occasion, Ms. Sunaz was in the basement with buckets in both hands filled with cleaning supplies and Mr. Smith grabbed Ms. Sunaz's breasts, knowing that with her hands full, she would be unable to fend him off, and said to her "thank you," as if touching her breasts was some sort of joke.

30. On another occasion, Mr. Smith approached Ms. Sunaz in the basement and she directly told him "no touching no touching," and Mr. Smith responded "I just want to squeeze" and, despite her instruction, he reached out and squeezed her breasts.

31. Thereafter, Ms. Sunaz attempted to cross her arms over her breasts any time Mr. Smith was nearby in order to prevent him from sexually harassing her.

32. However, there continued to be occasions where Mr. Smith grabbed Ms. Sunaz's breasts and would also slap Ms. Sunaz's behind without her consent when she was unable to avoid the contact.

33. On one occasion, Mr. Smith reached out for Ms. Sunaz's breasts and she crossed her arms to prevent him from touching her.  Mr. Smith then tugged at Ms. Sunaz's arms and said to her, "You're very strong."  Ms. Sunaz responded, "Stop it," and Mr. Smith replied, "Oh, you're not in the mood?"

34. In or around January 2017, Mr. Smith approached Ms. Sunaz while she was sitting down and eating in the basement, and yanked her head and thrust it into his crotch.

35. No reasonable employee can possibly be expected to endure a work environment with this level of sexual harassment and hostility.  On January 20, 2017, Ms. Sunaz reported Mr.

Smith's harassing conduct to Ms. Camin, and never returned to work as she had been constructively discharged.

36. Ms. Sunaz had not previously reported Mr. Smith's conduct given that Despont's complaint procedure and remedial measures proved to be ineffective and worthless when she had attempted to utilize those channels in connection with her discrimination and harassment complaints against Ms. Santos.

37. On January 23, 2017, Mr. Smith sent Ms. Sunaz a text message stating, "I guess u no longer want to work here." Ms. Sunaz responded, "Depress. Sally put me thru hell and you sexually harassing me. touching grabbing. so much hostile things I don't deserve[]." Mr. Smith mockingly responded, "I'm sorry sweetie We like u Or I do!!"



38. On January 23, 2017, Ms. Camin text messaged Ms. Sunaz saying, "Even if you decide to never come back to work here or after this week (AND I DON'T BLAME YOU) . . ." and then pleaded with Ms. Sunaz to come back to meet with her to tell her side of the story "for the sake of all the other women in this office."

39. However, at that point, the sexual harassment, including not only comments and remarks, but numerous and repeated unwanted sexual touchings, had become too much for Ms. Sunaz to take, as she had been constructively discharged.

40. Moreover, Ms. Sunaz felt that Despont did not have any legitimate mechanism to address employee complaints and remedy the unlawful terms and conditions of her employment, and felt she had no choice but to completely remove herself from that environment.

**Additional Facts Showing Despont's Lack of Bona Fide Complaint Procedures**

41. Ms. Sunaz's belief that Despont was unwilling and/or unable to adequately address her complaints about Mr. Smith was based not only on the manner in which Ms. Santos' conduct was never remedied, but also due to allegations by another former Despont employee.

42. According to the public filings, on January 27, 2016, a lawsuit was filed against Despont by a former employee named Dominique Moore, in which Ms. Moore alleged that after *five years of employment she was fired only two weeks after she complained that she was being discriminated against on the basis of her pregnancy*. See Moore v. Despont Studios LLC, et al., No. 16-cv-00619 (S.D.N.Y.).

43. According to the public filings, Ms. Moore even had actual email proof that employees at Despont were making disparaging remarks about her pregnancy, such as musings by employees that Ms. Moore was using her pregnancy to avoid work and stating that Despont could not afford to have another pregnant employee.

44. According to the public filings, soon after she returned from maternity leave, Ms. Moore complained about this pregnancy discrimination, and Mr. Maddalene responded to her that "**I know you have issues at home**," to which Ms. Moore responded, "**I don't have issues at home.  I have a _baby_ at home.**"

45. According to the public filings, approximately two weeks after Ms. Moore complained about pregnancy discrimination, she was called into a meeting to discuss the results of Despont's so-called investigation, the result being they told her she was being fired, stating that her maternity leave was a factor in the decision.

46. According to the public filings, the retaliation against Ms. Moore did not end with her termination, but continued when Ms. Moore engaged in further protected conduct by filing a complaint of discrimination in court.  Thereafter, Despont filed counterclaims against Ms. Moore seeking monetary damages from her – even though she was the one terminated after she complained about discrimination – claiming that she violated federal laws and breached a confidentiality agreement, both of which Ms. Moore denied.

47. Furthermore, a search of public records does not yield a single other instance of Despont suing a former employee for any reason whatsoever, other than Ms. Moore, who had first complained that she was discriminated against and retaliated against before any claim of Ms. Moore's unlawful conduct appears to have ever surfaced.

**FIRST CAUSE OF ACTION**
**(Discrimination and Harassment in Violation of Section 1981)**
**(*Against Defendant Despont*)**

48. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

10

49. By the conduct described above, Defendant Despont has discriminated against and/or permitted and/or acquiesced to the discrimination of Plaintiff on the basis of her race and/or ethnicity in violation of Section 1981, and as a result she has been denied the same terms and conditions of employment available to other employees.

50. By the conduct described above, Defendant Despont has discriminated against and/or permitted and/or acquiesced to the discrimination of Plaintiff on the basis of her race and/or ethnicity in violation of Section 1981 by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment.

51. As a direct and proximate result of Defendant Despont's unlawful discriminatory conduct and harassment in violation of Section 1981, Plaintiff has suffered, and continues to suffer, monetary and emotional harm for which she is entitled to an award of damages.

52. Defendant Despont's unlawful and discriminatory actions constitute malicious, willful and wanton violations of Section 1981 for which Plaintiff is entitled to an award of punitive damages.

**SECOND CAUSE OF ACTION**
**(Discrimination in Violation of NYSHRL)**
**(*Against Defendant Despont*)**

53. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

54. By the conduct described above, Defendant Despont has discriminated against and/or permitted and/or acquiesced to the discrimination of Plaintiff on the basis of her race and/or ethnicity and/or gender in violation of the NYSHRL, and as a result she has been denied the same terms and conditions of employment available to other employees.

55. By the conduct described above, Defendant Despont has discriminated against and/or permitted and/or acquiesced to the discrimination of Plaintiff on the basis of her race and/or ethnicity and/or gender in violation of the NYSHRL by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment.

56. As a direct and proximate result of Defendant Despont's unlawful discriminatory conduct and harassment in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and emotional harm for which she is entitled to an award of damages.

### THIRD CAUSE OF ACTION
**(Aiding and Abetting in Violation of NYSHRL)**
**(*Against Defendant Smith*)**

57. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

58. By the actions described above, Defendant Smith knowingly and/or recklessly aided and abetted and directly participated in the unlawful discrimination to which Plaintiff was subjected in violation of the NYSHRL.

59. As a direct and proximate result of Defendant Smith's unlawful discriminatory conduct and harassment in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and emotional harm for which she is entitled to an award of damages.

### FOURTH CAUSE OF ACTION
**(Discrimination in Violation of NYCHRL)**
**(*Against Defendant Despont*)**

60. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

61. By the conduct described above, Defendant Despont has discriminated against and/or permitted and/or acquiesced to the discrimination of Plaintiff on the basis of her race

and/or ethnicity and/or gender in violation of the NYCHRL, and as a result she has been denied the same terms and conditions of employment available to other employees.

62. By the conduct described above, Defendant Despont has discriminated against and/or permitted and/or acquiesced to the discrimination of Plaintiff on the basis of her race and/or ethnicity and/or gender in violation of the NYCHRL by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment.

63. As a direct and proximate result of Defendant Despont's unlawful discriminatory conduct and harassment in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and emotional harm for which she is entitled to an award of damages.

64. Defendant Despont's unlawful discriminatory actions constitute malicious, willful and wanton violations of NYCHRL for which Plaintiff is entitled to an award of punitive damages.

## FIFTH CAUSE OF ACTION
### (Aiding and Abetting in Violation of NYCHRL)
### (*Against Defendant Smith*)

65. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

66. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

67. By the actions described above, Defendant Smith knowingly and/or recklessly aided and abetted and directly participated in the unlawful discrimination to which Plaintiff was subjected in violation of the NYCHRL.

68. As a direct and proximate result of Defendant Smith's unlawful discriminatory conduct and harassment in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and emotional harm for which she is entitled to an award of damages.

69. Defendant Smith's unlawful discriminatory actions constitute reckless, malicious, willful and wanton violations of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendants for the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States, the State of New York and the City of New York;

B. An order that Defendants engage in injunctive measures aimed at remedying the unlawful conduct described herein so that other employees will not be subject to the same unlawful conduct;

C. An award of damages against Defendants, in an amount to be determined at trial, plus interest, to compensate Plaintiff for all monetary and/or economic damages;

D. An award of damages against Defendants, in an amount to be determined at trial, plus interest, to compensate for all non-monetary and/or compensatory damages, including, but not limited to, compensation for Plaintiff's emotional distress;

E. An award of punitive damages in an amount to be determined at trial;

F. Prejudgment interest on all amounts due;

G. An award of Plaintiff's reasonable attorneys' fees and costs; and

H. Such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: March 17, 2017
New York, New York

                        Respectfully submitted,

                        **WIGDOR LLP**

By: _____
     David E. Gottlieb
     Hilary J. Orzick (*admission pending*)

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
dgottlieb@wigdorlaw.com
horzick@wigdorlaw.com

*Attorneys for Plaintiff*